IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| PMF ENTERPRISES, INC., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:14-CV-339 (MTT) |
| ) | |
| SOUTHCREST BANK, ) | |
| ) | |
| Appellee. ) | |
| ) | |

## ORDER

Before the Court is an appeal from the United States Bankruptcy Court for the Middle District of Georgia. The Bankruptcy Court, Judge James P. Smith presiding, overruled Appellant PMF Enterprises, Inc.'s objection to a proof of claim filed by Appellee SouthCrest Bank. For the following reasons, the Bankruptcy Court's decision is **AFFIRMED**.

## I. STANDARD OF REVIEW

The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a). In reviewing the decision of a bankruptcy court, a district court functions as an appellate court. *Williams v. EMC Mortg. Corp. (In re Williams)*, 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam). This Court must accept the bankruptcy court's findings of fact unless those facts are clearly erroneous. *United States v. Mitchell (In re Mitchell)*, 633 F.3d 1319, 1326 (11th Cir. 2011). The Court may not make independent factual findings of its own. *Equitable Life Assurance Soc'y v. Sublett (In re Sublett)*, 895 F.2d 1381, 1384 (11th Cir. 1990). Conclusions of law, however, including a bankruptcy


court's interpretation and application of the Bankruptcy Code, are reviewed de novo. *See Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir. 1990). This Court, therefore, owes no deference to the Bankruptcy Court's interpretation of the law or its application of the law to the facts. *Goerg v. Parungao (In re Goerg)*, 930 F.2d 1563, 1566 (11th Cir. 1991).

## II. FACTUAL BACKGROUND

Debtor-Appellant PMF Enterprises, Inc. ("PMF") operated a convenience store in Perry, Georgia. To purchase the convenience store and gas station, KPB Enterprises, LLC ("KPB") took out a loan from Century Security Bank, the predecessor in interest to Creditor-Appellee SouthCrest Bank, and executed a promissory note in favor of Century Security Bank. KPB also executed a security deed on the real property and a security agreement on the inventory in favor of Century Security Bank to secure the loan.[1] Pierre Beauchamp, the sole owner of both KPB and PMF, guaranteed the loan from Century Security Bank.

PMF obtained insurance coverage on the convenience store property through Catawba Insurance Company. Despite having record title to the real property, KPB was not listed as an insured. Century Security Bank, however, was named as a mortgagee/loss payee under the policy. The policy included the following coverage limits: $400,000 for the building; $100,000 for the canopy; $1,160,000 for fuel pumps and tanks; and $280,000 for personal property and contents. The policy also included coverage for business income, which encompassed normal operating expenses.

---

[1] While the Parties agree that Century Security Bank had a security interest in the inventory, the scope of this agreement is not apparent and it does not appear that the agreement is in the record.

On November 28, 2008, a fire occurred at the convenience store and caused substantial damage. Catawba paid out the $400,000 coverage limit for damage to the building and $76,526.93 for damage to the pumps and tanks. Catawba refused to make any more payments under the policy. As a result, Century Security Bank applied some of the insurance proceeds to the monthly mortgage payments. The remainder was paid to BGN Restoration, LLC, which Beauchamp hired to rebuild the store. No further payments were made on the note, and the note went into default. Additionally, BGN had to cease work on the property because the insurance proceeds were insufficient to cover the entire restoration cost.

PMF filed suit against Catawba in Fulton County State Court in November 2009[2] to recover amounts it claimed were due under the policy.[3] (Doc. 3-4). Specifically, PMF claimed Catawba breached the insurance policy by failing to make the monthly mortgage payments KPB owed to Century Security Bank, which PMF contended were encompassed by the policy coverage for normal operating expenses. PMF alleged that Catawba's refusal to make the monthly payments caused the mortgage to go into default and that Catawba was therefore liable for the entire mortgage debt.

On May 24, 2011, SouthCrest, which by this point was the holder of Century Security Bank's claim against KPB, sued Catawba in Gwinnett County State Court for amounts it claimed were due under the insurance policy. (Doc. 3-10). SouthCrest sought $927,949.80 in damages, alleged to be "the deficiency owed to [SouthCrest] on

---

[2] Though this lawsuit was filed before PMF's bankruptcy case, the Bankruptcy Court appointed the same law firm to prosecute the lawsuit on behalf of the trustee.

[3] Beauchamp was originally named as a plaintiff as well, but the court dismissed his claims on summary judgment.

its mortgage on the property." (Doc. 3-10, ¶ 21).  The Fulton County suit that PMF filed against Catawba was still pending.

On March 16, 2012, SouthCrest and Catawba settled the Gwinnett County suit for $150,000.  (Doc. 3-3).  This settlement agreement forms the basis for PMF's objection to SouthCrest's claim.  PMF contends this agreement settled the entire mortgage debt and not merely SouthCrest's claims against Catawba.  The terms are discussed in detail below.

About two weeks after the Gwinnett County case settled, the Fulton County case between PMF and Catawba went to trial.  The jury returned a verdict for PMF and awarded $155,000.00 for contents; $266,256.00 for net income lost; $22,800.00 for continuing normal operating expenses; $28,000.00 for debris removal; $60,000.00 for a bad faith penalty; and $41,825.65 for attorneys' fees.  (Doc. 3-12).  The verdict expressly excluded "mortgage expenses" from the amount for continuing normal operating expenses.  Post-verdict, PMF, Catawba, Beauchamp, and KPB[4] entered into a settlement agreement whereby Catawba agreed to pay PMF's Chapter 7 estate $550,000.00.[5]

As a result of the settlement, the trustee in PMF's bankruptcy case filed a motion to compromise the Fulton County case in the Bankruptcy Court.  SouthCrest objected to the following language in the Fulton County settlement agreement, which referenced SouthCrest's settlement with Catawba:

---

[4] Even though Beauchamp and KPB were not parties to the Fulton County suit, they were parties to the settlement agreement.

[5] Though not mentioned in the Bankruptcy Court's opinion, it appears judgment was entered against Catawba for $698,881.65, accounting for the verdict amount and $125,000 in inventory the trial court previously ruled that PMF was entitled to on summary judgment. (Docs. 1-1 at 211, 217; 3-11 at 4; 3-2 at 4).

> Said settlement satisfied and released all claims which SouthCrest Bank had filed in the bankruptcy cases of PMF Enterprises, Inc. and KPB Enterprises, LLC.  To the extent any bankruptcy claims or other interest of SouthCrest Bank were assigned to Catawba they are hereby waived and released.

(Docs. 1 at 114-16; 3-2 at 8).  SouthCrest contended its settlement with Catawba did not release its bankruptcy claims.

Ultimately, the parties agreed to strike the above paragraph and insert "assigned or otherwise" into another paragraph of the agreement:

> Catawba Insurance Company agrees that all claims and demands that the Company has or could have had or may have had *assigned or otherwise* against either of the Claimants, PMF Enterprises, Inc. or Pierre Beauchamps,[6] individually, or KPB Enterprises, LLC, with respect to the herein-described dispute are satisfied, discharged, and settled by this agreement.

(Doc. 3-2 at 5) (emphasis added).  This was the version approved by the Bankruptcy Court.

### III. PROCEDURAL BACKGROUND

PMF and KPB each filed Chapter 7 cases in the Bankruptcy Court on February 1, 2010.  After the Bankruptcy Court granted SouthCrest relief from the automatic stay, SouthCrest foreclosed on the convenience store property and confirmed the sale in state court.  SouthCrest then filed proofs of claim in the amount of $927,949.80 in both cases, which reflected the amount of KPB's debt minus the proceeds from the foreclosure sale.  SouthCrest later amended its claims to $777,949.80, reflecting the settlement with Catawba.

---

[6] At various points in the record, PMF and KPB's owner is referred to as "Pierre Beauchamp" and "Pierre Beauchamp*s*."  Because the Parties refer to him as Pierre Beauchamp in their briefs, this is how the Court refers to him.

PMF and KPB filed objections to SouthCrest's claims, contending, as PMF does on appeal, that the SouthCrest/Catawba settlement agreement settled any claims SouthCrest had for the mortgage deficiency.  The Bankruptcy Court held a hearing on the claim objections on September 10, 2013, but deferred ruling on the objections until resolution of the trustee's motion to consolidate the PMF and KPB cases.  On January 15, 2014, the Bankruptcy Court substantively consolidated the cases under PMF's heading.

In its memorandum opinion on the claim objection, the Bankruptcy Court first found that paragraph 9 of the SouthCrest/Catawba settlement agreement was ambiguous.  That paragraph provides:

> SouthCrest accepts Catawba's payment of $150,000, made pursuant to the mortgagee clause of the policy of insurance Catawba Insurance Company issued, policy number CBO4086029 for the policy period September 5, 2008 to September 5, 2009 to PMF Enterprises, Inc. d/b/a Super Food Mart, 517 N. Perry Parkway, Perry, Georgia 31069 with an effective date of September 5, 2008, as full payment and *satisfaction of SouthCrest's claim pursuant to the mortgagee clause, including, but not limited to, the mortgage debt*, for the $927,949.50 owed to SouthCrest concerning the mortgage on 517 N. Perry Parkway, Perry, Georgia 31069, and including all claims for inventory and contents and personalty at the premises.

(Doc. 3-3, ¶ 9) (emphasis added).  Specifically, the court found the combination of the phrases "satisfaction of SouthCrest's claim pursuant to the mortgagee clause" and "including, but not limited to, the mortgage debt" was ambiguous because "there is a question as to whether the parties settled only SouthCrest's claim against Catawba under the insurance contract, or whether they also settled the mortgage debt itself, i.e., SouthCrest's claim against KPB."  (Doc. 1 at 320).

To resolve this ambiguity, the Bankruptcy Court looked to extrinsic evidence, including the insurance policy issued to PMF and testimony presented at the claim objection hearing. As interpreted by the Bankruptcy Court, the "mortgagee clause" referenced in the settlement agreement was Section F.2. of the insurance policy:

> 2. Mortgage Holders
>
> > a. The term "mortgage holder" includes trustee.
> > b. We will pay for *covered loss of or damage to buildings or structures* to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.
> > c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure … .

(Doc. 1-1 at 244) (emphasis added). The Bankruptcy Court read the italicized language to limit SouthCrest's recovery under the "mortgagee clause" to "covered loss of or damage to buildings or structures" and thus not to include the mortgage debt or SouthCrest's claim against KPB. Further, the court determined that the reference to the mortgage debt in paragraph 9 of the settlement agreement could only be referring to the fact that SouthCrest had included a demand for the mortgage debt in its complaint.

The Bankruptcy Court went on to examine the testimony of Kevin Wangerin, the attorney for PMF and later the attorney for the trustee in the Fulton County case, and Mike Low, Senior Vice President of SouthCrest Bank. Wangerin testified about a conversation he had with Richard Tisinger, the attorney who represented SouthCrest in the Gwinnett County case, because Wangerin wanted to be sure he understood what the Gwinnet County settlement encompassed as he was negotiating with Catawba in the Fulton County case. Wangerin further testified that he believed the Gwinnett County

settlement agreement settled (and assigned to Catawba)[7] the claim for the mortgage debt, but the Bankruptcy Court found Wangerin was unclear about whether Tisinger actually told him the agreement settled SouthCrest's claim to the mortgage debt against KPB.[8] The court determined Low, who was in charge of the settlement negotiations on behalf of SouthCrest, clearly testified SouthCrest did not intend to settle its claim for the mortgage debt against KPB.[9]

---

[7] This alleged assignment is discussed in more detail below.

[8] The Bankruptcy Court cited the following testimony from the claim objection hearing:

> Q Okay. Now, did you talk with [Tisinger] specifically about the Release being applicable to PMF, for instance?
> A Well, you know, I don't think we talked directly about the Gwinnett County Release in terms of its terms. I think that we discussed that once that Release, when it discussed the mortgage debt and the Deficiency Judgment, that that Release was including those items, meaning including the bank's claim for that $927,000.

(Doc. 1-1 at 371:10-17).

[9] Low testified, in relevant part:

> And they tendered a – the insurance company tendered a Settlement Agreement after we had agreed on a number. And we had advice from the Tisinger firm concerning language in it. And also, because of their request that we assign our interest in the Note, I had conversation with my corporate counsel, because of the Loss-Share agreement, we could not readily assign our interest in the Note without FDIC' permission, and we didn't want to go seek that. So we told the insurance company that that was not something that we could do, that it was not our intention to release the borrower/guarantor.
> …
>
> We couldn't readily assign our interest and we told the insurance company that we couldn't; that we didn't want to do that, that we would take their money and would not pursue a claim against them.
> Q "Them" being who?
> A The insurance company.

(Doc. 1-1 at 392:9-19, 394:12-17).

Thus, the Bankruptcy Court found the settlement did not release SouthCrest's claim against KPB[10] and overruled PMF's objection on July 28, 2014.[11] This appeal follows.

## IV. DISCUSSION

PMF contends that the Bankruptcy Court erred in finding an ambiguity in the SouthCrest/Catawba settlement agreement and that the settlement agreement unambiguously settles and releases any claim SouthCrest had to the mortgage debt against KPB. A settlement agreement is a contract and thus subject to the rules of statutory construction. *Peacock v. Spivey*, 278 Ga. App. 338, 339, 629 S.E.2d 48, 50 (2006). Pursuant to Georgia law, construction of a contract is a question of law for the Court. O.C.G.A. § 13-2-1; *Savannah Yacht Corp. v. Thunderbolt Marine, Inc.*, 297 Ga. App. 104, 109, 676 S.E.2d 728, 732 (2009). If a contract is ambiguous, the rules of contract construction found in O.C.G.A. § 13-2-2 apply. *Savannah Yacht Corp.*, 297 Ga. App. at 109, 676 S.E.2d at 732. "Ambiguity exists where the words used in the contract leave the intent of the parties in question." *Nebo Ventures, LLC v. NovaPro Risk Solutions, L.P.*, 324 Ga. App. 836, 844, 752 S.E.2d 18, 26 (2013) (quoting *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 106, 661 S.E.2d 578 (2008)). However, "[w]henever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning." *Urban

---

[10] As discussed above, KPB was the entity that executed the note and security deed, but its bankruptcy estate was substantively consolidated with PMF's.

[11] PMF does not challenge the Bankruptcy Court's rejection of its accord and satisfaction, judicial estoppel, promissory estoppel, and res judicata arguments.

*Servs. Grp., Inc. v. Royal Grp., Inc.*, 295 Ga. App. 350, 352, 671 S.E.2d 838, 840 (2008) (quoting *First Data POS v. Willis*, 273 Ga. 792, 794, 546 S.E.2d 781 (2001)).

The Court finds that the SouthCrest/Catawba settlement agreement unambiguously settles and releases only claims SouthCrest could have raised against Catawba under the insurance policy. Paragraph 9 of the settlement agreement states SouthCrest is accepting payment to settle its "claim pursuant to the mortgagee clause." The Parties may disagree about what exactly the "mortgagee clause" refers to,[12] but they both agree this phrase refers to some portion of the insurance policy issued by Catawba. SouthCrest's claim against KPB for the mortgage debt is not a claim it has pursuant to the insurance policy. The basis for that claim would obviously be the loan documents, i.e., the note and security deed.

The reason the Bankruptcy Court ruled paragraph 9 of the settlement agreement was ambiguous is because the Bankruptcy Court found the "mortgage debt" mentioned in paragraph 9 was not something SouthCrest could have recovered pursuant to the "mortgagee clause" of the insurance policy. But this becomes ambiguous only if the settlement agreement can be read to somehow suggest KPB's mortgage debt, as opposed to SouthCrest's claims against Catawba, are being settled. It cannot. Reading the settlement agreement as a whole, it is clear that SouthCrest was settling only claims it could have asserted against Catawba arising out of damage to the convenience store property—whatever their likelihood of success. It is equally clear SouthCrest was not settling any potential claims against KPB or PMF. For instance, paragraph 1 of the settlement agreement reads:

---

[12] Nothing in the insurance policy is entitled "mortgagee clause." There is a section under "PROPERTY GENERAL CONDITIONS" called "Mortgage Holders," which itself has seven subsections and multiple sub subsections.

> For and in consideration of the sum of One Hundred and Fifty Thousand ($150,000.00) Dollars made payable to SouthCrest Bank, a division of the Bank of Upson, as Assignee from the FDIC, as Receiver for Century Security Bank ("SouthCrest") the receipt and sufficiency of which is hereby acknowledged, *SouthCrest hereby releases, acquits and forever discharges Catawba Insurance Company*, ("Catawba") and all past, present and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors, heirs, executors, administrators, personal representatives, successors in interest, assigns and all other persons, firms or corporations with whom any of the former have been, or now, or may hereafter be affiliated, *from any claims SouthCrest has or may have against Catawba* concerning damage to SouthCrest concerning the above-styled case and the real and personal property at 517 N. Perry Parkway, Perry, Georgia 31069.

(Doc. 3-3, ¶ 1) (emphasis added).  Additionally, paragraph 3 provides, "This Release shall be a fully binding and complete settlement *between SouthCrest and Catawba* as to *all issues in the above styled action*."  (Doc. 3-3, ¶ 3) (emphasis added).  The only parties to the action and to the settlement agreement were SouthCrest and Catawba.

PMF focuses on language in the settlement agreement discussing the debt KPB and Beauchamp owed SouthCrest.  That language reads, in pertinent part:

> SouthCrest and Catawba acknowledge and agree to the following facts:
> …
> f. On or about August 3, 2010, KPB Enterprises, LLC, as mortgagor and Pierre Beauchamps as guarantor of the mortgage debt, owed SouthCrest Financial Group, d/b/a SouthCrest Bank, Successor in Interest of Century Security Bank, at least $927,949.50 concerning the mortgage on 517 N. Perry Parkway, Perry, Georgia 31069. The value of the property acquired at foreclosure for $1,300,000.00 was less than the outstanding mortgage debt of $2,227,949.80.

(Doc. 3-3, ¶ 8).  PMF contends that this language "would be unnecessary if the release of those two was not intended" and that the "reference to the $927,949.50 would be unnecessary unless that language was intended to address KPB and Mr. Beauchamp's liability."  (Doc. 4 at 20).  Regardless of whether this language is strictly "necessary" to

-11-

release SouthCrest's claims against Catawba, the fact that the settlement agreement includes details about the mortgage debt and the parties involved does not mean a release of those parties was intended.  KPB and Beauchamp are only mentioned in paragraph 8, which is simply the factual background SouthCrest and Catawba agree to. It is clear the agreement does not release any claims SouthCrest may have against them.

      PMF further argues that the "mortgagee clause" referred to in the SouthCrest/Catawba settlement was the provision of the insurance policy that allowed Catawba to pay the entire mortgage debt and take assignment of the mortgage debt; that SouthCrest agreed for Catawba to pay less than the full amount of the mortgage debt and still be assigned the entire debt; and that Catawba then released the remainder of the mortgage debt in its settlement with PMF, KPB, and Beauchamp.  The insurance policy reads:

> If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:
>
> (1) The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and
> (2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.
>
> At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

(Doc. 1-1 at 245).  According to the insurance policy, Catawba is only assigned the mortgage debt to the extent of Catawba's payment and thus is only assigned the entire debt if it pays the entire debt.  The policy also specifies the mortgage holder's right to

recover the full amount of the debt is not extinguished. It is undisputed that Catawba did not pay the entire mortgage debt and that SouthCrest reduced its bankruptcy claim by the amount of the Catawba settlement. Further, it would not make sense for the "mortgagee clause" to refer to this provision because SouthCrest had no claim "pursuant to" this provision. Instead, the provision gave Catawba an option to pay the mortgage debt and be assigned the debt to the extent of its payment.

Though it is not altogether clear, PMF appears to contend that paragraph 11 of the settlement agreement also somehow shows SouthCrest agreed to accept the $150,000 for Catawba to be assigned the entire mortgage debt. Paragraph 11 provides:

> Pursuant to the terms of the policy of insurance Catawba Insurance Company issued, policy number CBO4086029 for the policy period September 5, 2008 to September 5, 2009 to PMF Enterprises, Inc. d/b/a Super Food Mart, 517 N. Perry Parkway, Perry, Georgia 31069 with an effective date of September 5, 2008, SouthCrest shall and hereby does release and assign SouthCrest's *interest in the policy of insurance* to Catawba.

(Doc. 3-3, ¶ 11). As previously discussed, SouthCrest's interest in the mortgage debt does not arise from the insurance policy; rather, it arises from the loan documents. Thus, assigning SouthCrest's "interest in the policy of insurance" does not assign SouthCrest's interest in the mortgage debt; it simply relinquishes SouthCrest's interest in the policy, which is logical given that SouthCrest was settling its claims under the policy.[13] Therefore, PMF's argument that Catawba was assigned the entire mortgage debt and then released it in the Fulton County settlement is unavailing.

---

[13] If, on the other hand, SouthCrest had assigned its claim against KPB, that certainly would have extinguished SouthCrest's claim against KPB.

Alternatively, even if there were an ambiguity as to whether SouthCrest and Catawba intended to settle the entire mortgage debt, the Bankruptcy Court did not clearly err in finding SouthCrest and Catawba did not so intend.  PMF's counsel conceded at oral argument that there is no evidence in the record to rebut Low's testimony, on which the Bankruptcy Court relied, regarding SouthCrest's intent in the settlement.[14]  Thus, regardless of whether the Bankruptcy Court properly found the settlement agreement was ambiguous, the Bankruptcy Court correctly determined the SouthCrest/Catawba settlement agreement did not release any claims against KPB or PMF.

## V. CONCLUSION

The settlement agreement unambiguously settled only SouthCrest's claims against Catawba and not its claim to the mortgage debt against any other person or entity.  Thus, the Bankruptcy Court's ultimate conclusion was correct.  Alternatively, the Bankruptcy Court did not clearly err in finding SouthCrest and Catawba did not intend to settle the mortgage debt.  Accordingly, the decision of the Bankruptcy Court is **AFFIRMED**.

**SO ORDERED,** this 1st day of June, 2015.

                                          S/ Marc T. Treadwell
                                          MARC T. TREADWELL
                                          UNITED STATES DISTRICT COURT

---

[14] In its brief, PMF points to language in the pretrial order entered in the Fulton County case suggesting Catawba viewed the SouthCrest/Catawba settlement as settling and releasing any claim to the mortgage debt SouthCrest could have asserted against PMF or KPB. (Docs. 4 at 22; 3-11 at 7). However, as the Bankruptcy Court points out, the same pretrial order also included language suggesting the settlement was only for contents and inventory coverage under the policy. (Docs. 1 at 323; 3-11 at 6).  Thus, the Bankruptcy Court did not clearly err in its finding on SouthCrest and Catawba's intent.